**SWENSEN'S ICE CREAM COMPANY; Swensen's, Inc., Appellants,**

v.

**CORSAIR CORPORATION; Donald Frank; Diane Frank, Appellees.**

**No. 90–2481WM.**

United States Court of Appeals, Eighth Circuit.

Submitted April 9, 1991.

Decided Aug. 27, 1991.

Rehearing and Rehearing En Banc Denied Oct. 8, 1991.

---

William H. McDonald, argued (William Todd and Celeste Johns, on brief), Springfield, Mo., for appellants.

Donald Woody, argued (O.J. Taylor, on brief), Springfield, Mo., for appellees.

Before McMILLIAN, ARNOLD, and BEAM, Circuit Judges.

ARNOLD, Circuit Judge.

In this case we must determine whether federal court is a proper forum to resolve differences between Swensen's Ice Cream Company of Andover, Massachusetts, and the operators of three Swensen's Ice Cream Shops in Springfield, Missouri. Swensen's claims that this lawsuit should be halted in favor of binding arbitration. We disagree, and affirm the judgment of the District Court.[1]

The case turns upon the scope of arbitration clauses contained in three franchise agreements between Swensen's, Donald and Diane Frank, and Corsair Corporation. At issue also is a distribution agreement between the parties, permitting Donald Frank and Corsair Corporation to distribute ice cream manufactured at Frank's shops to restaurants and other franchisees in an eight-state area, and to supermarkets within 50 miles of Springfield, Missouri. The distribution agreement itself contains no language requiring arbitration. Swensen's contends, however, that the distribution agreement was contingent upon the existence of the franchise relationship, and, therefore, that any dispute concerning the distribution agreement is also subject to the arbitration clauses contained in the franchise agreements.

This case began after a sour turn in the parties' business relationship in early 1990. Swensen's sued first, asking the District Court to prohibit the defendants from operating their ice-cream shops independently, under a name other than Swensen's, as they had begun to do in March 1990. The defendants counterclaimed, alleging numerous violations of the franchise and distribution agreements, as well as other claims. In response to the counterclaim, Swensen's withdrew its request for an injunction, and filed instead a motion to compel arbitration of all of the issues raised in the counterclaim. The District Court held that some, but not all, of the Franks' grievances against Swensen's were subject to arbitration. The Court refused to stay proceedings on the remaining claims pending the outcome of arbitration.

The relevant contractual provisions are found in documents spanning a period of nine years. In 1979 Donald Frank entered into two separate franchise agreements

---

1. The Hon. William R. Collinson, Senior United States District Judge for the Eastern and Western Districts of Missouri.

with Swensen's. These agreements gave Donald Frank the right to operate two retail Swensen's Ice Cream Shops, along with the right to manufacture ice cream for retail sale at those two franchise locations. The same arbitration clause appears in both of the 1979 franchise agreements:

> (a) *Arbitration.* In the event of any dispute between Franchisor and Franchisee with respect to the interpretation, performance or alleged breach of this Agreement, such dispute shall be submitted to and resolved by arbitration in accordance with the rules of the American Arbitration Association....

Joint Appendix 41, 69.

In 1985, the parties executed a third franchise agreement, for an ice-cream shop at Battlefield Mall in Springfield. Under the terms of this agreement, the defendants were not permitted to manufacture ice cream at this location. This franchise agreement contains an arbitration clause broader in scope than the previous two:

> (a) *Arbitration.* Except as provided in subparagraph (b) of this Section and in Section 17, disputes arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association....

Joint Appendix 104.

In 1987, the parties executed what they refer to as a "wholesale/distribution" agreement. This agreement is in the form of a letter from Swensen's to Donald Frank. The letter memorialized the terms of a regional ice-cream distribution arrangement which Mr. Frank had recently undertaken with the consent of Swensen's. As noted previously, this agreement does not contain any arbitration clause. It does, however, specify that "[t]he above rights are granted to you subject to your continuing to be in good standing with your various franchise agreements and other arrangements with Swensen's." Joint Appendix 344.

The District Court determined that the plain language of the good-standing clause was not sufficient to subject claims based upon the distribution agreement to the arbitration clauses of the three franchise agreements. Nor was any of the arbitration clauses meant to govern all future business transactions between the parties: "By their terms, the three franchise agreements govern only the relationship of the parties with respect to each franchise location." No. 90–3153–CV–S–2, Order at 11 (W.D.Mo. August 3, 1990). Of the nine counts in defendants' counterclaim, the District Court referred to arbitration only Count I and portions of Counts VIII and IX. Count I alleges Swensen's breach of the three franchise agreements. Count VIII alleges, among other things, fraud and misrepresentation concerning the provision of recipes to defendants as promised in the franchise agreements. Count IX alleges that Swensen's violated its fiduciary duty to defendants under the franchise agreements and the distributorship agreement. The Court referred to arbitration only those parts of Counts VIII and IX relating to the franchise agreements.

The District Court held that Counts VI and VII, alleging federal and state antitrust violations, could not be the subject of an arbitration agreement as a matter of law. The Court then determined that the remaining counts, those counts related only to the distribution agreement, were beyond the reach of even the broadest arbitration clause, that contained in the Battlefield Mall franchise agreement. Count II alleges that plaintiffs broke the distributorship agreement. Count III alleges tortious interference with defendants' contracts and business expectancies with other Swensen's franchisees. Count IV alleges tortious interference with defendants' contracts and business expectancies with their own suppliers. Count V alleges a theory of prima facie tort. The remaining part of Count VIII alleges that Swensen's misrepresented to defendants and the general public the ingredients in its "All Natural" and "Lite" ice creams. The remaining part of Count IX alleges Swensen's violated its fiduciary duty to defendants under the distribution agreement.

We affirm the District Court's actions in all respects. Those counts of defendants' counterclaim which concern only the distribution agreement should remain for disposition in the District Court. This is because, as the District Court held, each arbitration clause is specific to a franchise location. The three franchise agreements govern the relationship of the parties as to each store. Even the third arbitration clause, with the most expansive language of the three, requires arbitration only of disputes "relating to" the Battlefield Mall franchise. None of the defendants' counterclaims remaining in the District Court "relates to" the operation of the Battlefield Mall location because, under the terms of that franchise agreement, defendants are not allowed to manufacture ice cream at this store. Defendants could not use their third store to manufacture any of the ice cream distributed to other businesses. Although we cannot tell from the record before us, there might be some relationship between the distribution agreement and store number three if that store were supplied by one of defendants' other stores. Since, however, the particulars of defendants' allegations do not involve this admittedly tangential relation, there is no relevant legal relationship between the distribution agreement and the Battlefield Mall store in this suit. There is no allegation that the Battlefield Mall franchise was injured by any of Swensen's actions in violation of the distribution agreement.

With respect to the antitrust claims, we agree with Swensen's that *Helfenbein v. International Industries*, 438 F.2d 1068 (8th Cir.), *cert. denied*, 404 U.S. 872, 92 S.Ct. 63, 30 L.Ed.2d 115 (1971), which the District Court believed to be controlling in this case, may no longer be a correct statement of the law. In *Helfenbein* we held that domestic antitrust violations are not subject to arbitration. Since that time the Supreme Court has handed down two decisions which may indicate that antitrust claims can be made the subject of arbitration between agreeing parties. See *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Mitsubishi Motors Corporation v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

In the matter before us, however, we need not decide this issue. The antitrust violations complained of by the defendants, if they occurred, undermined only the distribution agreement, and are therefore not subject to arbitration for the reasons already expressed. Even though some of the harm complained of, *e.g.*, the adverse impact of an unreasonable restraint of interstate trade upon individual franchises, is experienced by each of defendants' three franchise stores, the heart of the complaint implicates only the distribution agreement: "As a result of the illegal restraint of trade ..., counter-claim plaintiffs were restrained from offering ice cream and related products to Swensen's franchisees in competition with Swensen's.... The actions of the counterclaim defendants as aforedescribed have injured and damaged counterclaim plaintiffs by restricting and foreclosing the relevant market." Answer to Complaint and Counterclaim by Defendants at Joint Appendix 236. Therefore, we hold that the arbitration clauses in the three franchise agreements are not broad enough to reach the defendants' antitrust claims.

We also affirm the District Court's determination that Diane Frank is not compelled to arbitrate any dispute arising out of the first two franchise agreements. She was not a signatory to those agreements; her execution of a guarantee for the third franchise location does not bind her to the earlier agreements in any way.

Swensen's final attribution of error concerns the District Court's decision not to stay the proceedings in court pending the completion of the arbitration proceedings. We see no abuse of discretion in that decision. The motion of the parties to supplement the record is granted. The judgment of the District Court is affirmed.

BEAM, Circuit Judge, dissenting.

I respectfully dissent. In my view, the business activities to be carried out under the franchise and distribution agreements are so inextricably intertwined that they should be arbitrated as a package. *See,*

*e.g., Gilmer v. Interstate/Johnson Lane Corp.,* —— U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (statutory ADEA employment claim, not arising from a term in employment contract, must be arbitrated under general language found in securities dealer registration agreement). The economic relationships contemplated by these interrelated contracts cannot, through any realistic analysis, be efficiently parsed out or compartmentalized for separate arbitration and judicial consideration.

In my view, *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), and *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), buttressed by the decision in *Gilmer* dictate that the antitrust claims of appellees are subject to arbitration. Such claims are based, at least in part, on a "hand in glove" relationship between the franchise agreements *and* the distribution agreement. The difficulty the majority encounters in explaining how these interwoven issues can be presented for both judicial and non-judicial consideration makes my point.

I would reverse the district court and remand with directions to order arbitration of all the claims set forth in Counts I through IX of the counterclaims filed by appellees.